**Robert L. BAISDEN, Plaintiff,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 1133.**

United States District Court
S. D. West Virginia,
at Huntington.

Jan. 5, 1963.

Robert E. Lusk, Williamson, W. Va., for plaintiff.

Harry G. Camper, Jr., U. S. Atty., and George D. Beter, Asst. U. S. Atty., Huntington, W. Va., for defendant.

HARRY E. WATKINS, District Judge.

Plaintiff seeks judicial review of the final decision of the Secretary of Health, Education, and Welfare that he was not entitled to a period of disability and to disability insurance benefits under sections 223 and 216(i) of the Social Security Act, as amended. For the reasons hereinafter stated, it is now found that the decision of the Secretary is supported by substantial evidence and that the defendant's motion for summary judgment should be granted.

On November 17, 1959, plaintiff, who was then almost 62 years of age, filed an application to establish a period of disability and for disability insurance benefits. This application was denied by the Bureau of Old-Age and Survivors Insurance, both initially and upon reconsideration. On March 14, 1962, a hearing examiner also found that plaintiff was not entitled to a period of disability and to disability insurance benefits. This decision became the final decision of the Secretary when the Appeals Council denied plaintiff's request for review on May 22, 1962.

Plaintiff met the special earnings requirements on December 31, 1957, the date he alleged that he became disabled. He will continue to meet these requirements until March 31, 1963.

To be eligible for monthly insurance benefits based upon his application of November 17, 1959, plaintiff must have been under a continuous "disability" at the time of the filing of his application. Plaintiff must show that he was suffering from an impairment or combination of impairments which could

be expected to result in death or be of a long-continued and indefinite duration, and which was of sufficient severity to render him unable to engage in any substantial gainful activity, beginning at any time when he satisfied the applicable insured status requirements, and continuing indefinitely thereafter up to the time he filed his application on November 17, 1959. The burden of proof is upon the plaintiff. Bowden v. Ribicoff, 199 F.Supp. 720 (S.D.W.Va.1961).

■ The examiner held that the evidence in this record fails to show that beginning on December 31, 1957, the alleged onset of disability, or at any time thereafter, and continuing indefinitely up to November 17, 1959, the date the plaintiff filed the application here under consideration, that he was suffering from an impairment or a combination of impairments which could be expected to result in death or be of a long-continued or indefinite duration, and which was of sufficient severity to prevent him, considering his age, training, education, and work experience, from engaging in any substantial gainful activity. In his application, plaintiff did not claim any impairments other than ulcers as the basis for his claim of disability, but when considering the ulcer condition in combination with other subsequent complaints, the examiner held that they did not prevent plaintiff from engaging in any substantial gainful activity at the time here under consideration. There is substantial evidence to support this finding of fact.

It should first be observed that at the time of the inception of the alleged disability, December 31, 1957, plaintiff did not cease working in the mines because of any physical impairment. Apparently, he stopped working because of a lay off or a general reduction of forces at the mine at which he had been working for over eleven years. At the time of the lay off he had been performing his job as a motorman with practically all of his time being spent in a sitting position. He stated that he registered with the State Employment Agency after the lay off, but was not offered a job. At the hearing plaintiff testified that he could have taken another job at the time that he was laid off if he could have found a job that he could have performed, that his condition deteriorated, and that he did not even look for other employment.

The medical evidence shows that plaintiff was first seen by Dr. Robert A. Scott at the Miners Memorial Hospital at Williamson, West Virginia, on October 30, 1959, almost two years after the alleged onset of the disability. At that time he complained that he had had a catch in his low-back for some time, that he experienced a lot of gas on his stomach, that he had had a cough for several years which was associated with shortness of breath on exertion, and that after a hernia operation twenty years before he had developed what was determined to be a right hydrocele. Physical examination showed that the lungs were clear to percussion and auscultation. There was a regular sinus rhythm of the heart with no murmurs, and his blood pressure was 146/88. Epigastric tenderness and the hydrocele were noted. A chest X-ray showed fibrosis reaction in the lungs, but there was no consolidation of pleural effusion (presence of fluid in the pleural space). The lumbosacral spine showed loss of lumbar lordosis (curvature of the spinal column) which was attributed to a muscle spasm. There was no evidence of osseous or joint pathology, and there was no appreciable loss of disc space. There was calcification of the abdominal aorta, and a G. I. series showed an ulcer crater in the central portion of the pyloric gap. Dr. Scott, the physician who made the above discussed report, advised repair of the right hydrocele, and plaintiff was to return for admission for repair of the condition. Plaintiff was placed on a bland diet along with routine ulcer medication. He was further advised to stop smoking and drinking coffee. The diagnosis was "pneumoconiosis, duodenal ulcer, and a right hydrocele." It is significant that at the hearing plaintiff testified that as long as he ate properly his stomach did

not cause him much trouble and that he normally only coughed when he had a cold. He further testified that he experienced shortness of breath under such circumstances as walking one hundred yards up a hill. His primary complaint at the time of the hearing was stiffening of the fingers, although none of the medical evidence submitted by the plaintiff mentioned this alleged difficulty. At that time he could make a fist and stretch out the fingers of each hand.

On April 21, 1960, pulmonary function tests were conducted. The results of these studies showed that plaintiff's total vital capacity was greater than the predicted normal, the three second vital capacity was ninety-three percent of the total vital capacity, and the maximum breathing capacity was eighty-eight percent of the predicted normal.

Dr. John E. Stone examined plaintiff on October 7, 1960. He found that there were early signs of pneumoconiosis which was presumed to be silicosis, osteoarthritis (no portion of the body was indicated), an old injury deformity with limitation and impairment of the left ankle, hearing impairment, and refractive error bilaterally, worse to the right eye, and a peptic ulcer (admittedly based on plaintiff's history only). He expressed the opinion that plaintiff was disabled as far as his employment as a miner was concerned and for other work requiring physical effort. There was other similar evidence based on a report made by Dr. J. E. Johnson. He also expressed the opinion that plaintiff was physically unable to pursue any gainful occupation. No mention was made by either Dr. Stone or Dr. Johnson of the right hydrocele. Apparently, this condition was corrected as suggested by Dr. Scott. The reports of Dr. Stone and Dr. Johnson contain no clinical findings relative to the "evidenced" conditions other than the statement that routine laboratory tests and chest X-rays were conducted.

■ From this evidence, both objective and subjective, it is reasonably clear that plaintiff does have some impairments, but they are not of such severity as to prevent him from engaging in any substantial gainful activity within the meaning of the Act. It must also be remembered that plaintiff was laid off and did not cease working because of his physical condition, and that he made only one feeble effort to obtain any other employment, i. e., he registered with the State Employment Agency. The fact that a person does not seek employment that would make use of his residual capabilities is significant. Gotshaw v. Ribicoff, 4 Cir., 307 F.2d 840 and Pearman v. Ribicoff, 4 Cir., 307 F.2d 573, both decided by the Fourth Circuit Court of Appeals on August 30, 1962.

■ The conclusion of Dr. Stone and Dr. Johnson that plaintiff was disabled is clearly not binding on the hearing examiner, the Appeals Council, or this court. The opinions of doctors must be carefully weighed and evaluated in determining the ultimate issue of disability. Clearly, they are not to be summarily disregarded, but a flat assertion by a doctor that the claimant was disabled or unable to perform any gainful activity is of little assistance in aiding the arbiter of the facts in arriving at his conclusion concerning the plaintiff's disability as contemplated by the Act, especially where there is little, if any, clinical evidence to support such opinions. United States v. Spaulding, 293 U.S. 498, 55 S.Ct. 273, 79 L.Ed. 617; Underwood v. Ribicoff, 4th Cir., 298 F.2d 850 (1962). The opinions and conclusions of these doctors are not supported by substantial evidence when the record is viewed as a whole.

Therefore, since there is substantial evidence to support the Secretary's decision that plaintiff was not entitled "to establish a period of disability or to disability insurance benefits" and since plaintiff has failed to meet the criteria set forth in Underwood v. Ribicoff, supra, for establishing the existence of a disabling impairment within the meaning of the Act, defendant's motion for summary judgment is granted.